wo

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Spinedex Physical Therapy USA, Inc. et)    No. CV-08-457-PHX-ROS
al.,                                    )
                                        )    **ORDER**
            Plaintiffs,                 )
                                        )
vs.                                     )
                                        )
                                        )
United Healthcare of Arizona, Inc. et al., )
                                        )
            Defendants.                 )
                                        )
_____)

**BACKGROUND**

On July 9, 2008, Plaintiffs Claude Aragon, Jack Adams, Spinedex Physical Therapy USA, Inc. ("Spinedex") and the Arizona Chiropractic Society ("ACS") filed a Second Amended Complaint, alleging a class action under the Employee Retirement Income Security Act of 1974 ("ERISA") (Doc. 38). Aragon and Adams are participants or beneficiaries in, and thus receive health insurance from, one of the Plans and allege wrongful denial of benefits.[1] Spinedex is a medical practice which provided health care services to Aragon, Adams and other Plan participants and beneficiaries (i.e. Spinedex's patients) and alleges wrongful denial of compensation for services. ACS represents the interests of its member physicians who claim wrongful denial of compensation for services provided to Plan

_____

[1] "The Plans" refer to some or all of the forty-five employee welfare benefit plans named as Defendants.

participants and beneficiaries.  Forty-five employee welfare benefit Plans are named as Defendants ("Plan Defendants") (Doc. 38 at 13-23, 29-34).  Six corporations which allegedly are fiduciaries and administrators of the Plans are also named as Defendants ("United Defendants") (Doc. 38 at 8-12, 22-46).

On August 22, 2008, Defendants filed a Motion To Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 103).  Prior to filing the Motion, the parties stipulated to and the Court allowed the parties to exceed the length requirements of Local Rule of Civil Procedure 7.2(e) and file a thirty-five-page Motion and Response and a twenty-page Reply (Doc. 57).   On September 18, because the Motion violated the memoranda type-set requirements of Local Rule of Civil Procedure 7.1(b)(1), Defendants were ordered to resubmit the Motion in conformance with the Rule (Docs. 107-08).  Because the parties stipulated that the revisions required to conform the Motion to the Rule would only be a reduction of approximately four pages, the briefing schedule was not altered, except for granting a one-day extension for the Response (Docs. 108, 111).  The  revised Motion was filed on September 19, 2008 (Doc. 110).  Plaintiffs responded on September 23, 2008 (Doc. 112), and the Reply was filed on October 22, 2008 (Doc. 123).

On the same day as filing the Response, Plaintiffs filed a Motion For Leave To File Separate Statement, Objections, and Motion to Strike as a Separate Motion, which is fully briefed (Docs. 113, 118, 122).  Plaintiffs also filed two Requests For Judicial Notice and a Motion For Leave To File A Supplemental Memorandum, the first two of which Defendants did not oppose (Docs. 115, 124-25).  The Court's rulings are as follows:

- The Motion For Leave To File Separate Statement, Objections, and Motion to Strike as a Separate Motion will be denied.
- The Request For Judicial Notice will be granted in part.
- The Second Request For Judicial Notice will be granted.
- The Motion For Leave To File A Supplemental Memorandum will be denied.
- The Motion To Dismiss will be granted in part.

**DISCUSSION**

**I. Motion For Leave To File Separate Statement, Objections, and Motion to Strike as a Separate Motion**

Plaintiffs' Motion For Leave To File Separate Statement, Objections, and Motion to Strike as a Separate Motion will be denied (Doc. 113).  Local Rule of Civil Procedure 7.2(m) is clear: "An objection to the admission of evidence offered in support or opposition to a motion must be presented in the objecting party's responsive or reply memorandum . . . *and not in a separate motion to strike or other separate filing*."  LRCiv 7.2(m)(2) (emphasis added) ("Rule 7.2(m)").  Plaintiffs request permission to separately file a motion challenging evidence attached to the Motion To Dismiss.  According to Plaintiffs, it is "impossible for Plaintiffs to brief the issues and the law relating to their evidentiary objections and their Motion to Strike within the four corners of their [Response]" (Doc. 113 at 3).  The Court does not agree.  Plaintiffs also argue, because most motions to dismiss do not include voluminous evidentiary submissions, the "spirit of the Local Rules" should allow an exception (Doc. 113 at 3).  Again, the Court does not agree.  Finally, Plaintiffs infer they were prejudiced when the Court ordered Defendants to resubmit the Motion To Dismiss in conformance with Local Rule 7.1(b) but only granted Plaintiffs one additional day to respond.  This argument is without merit.  Plaintiffs had three and one-half weeks to respond to the Motion To Dismiss – from August 22 to September 17, 2008 – before the Rule 7.1(b) issue surfaced.  Defendants filed the revised motion to dismiss on September 19, 2008 and Plaintiffs had an additional four days to adust the Response to Defendants' minor revisions.  The Motion For Leave To File Separate Statement, Objections, and Motion to Strike as a Separate Motion will thus be denied.  None of the evidentiary objections presented in that Motion will be considered.

**II. Request For Judicial Notice**

1   Given Defendants' failure to respond, Plaintiffs' Request For Judicial Notice will be

2   granted and all documents listed in the Request will be noticed (Doc. 115 at 2-3).  See Fed.

3   R. Evid. 201(d) ("A court *shall* take judicial notice if requested by a party and supplied with

4   the necessary information.") (emphasis added).  The contents of the documents appear to be

5   "not subject to reasonable dispute" and "capable of accurate and ready determination by

6   resort to sources whose accuracy cannot reasonably be questioned," including court records,

7   public filings, and other government documents.  Fed. R. Evid. 201(b) (Docs. 115 at 2-3;

8   Doc. 116 Ex. B-H).  It is noted that some documents were attached to but not listed in the

9   body of the Request.  These documents will not be considered until properly included in a

10  formal request for judicial notice (Docs. 115 at 2-3; 116 Ex. A, I-N).

11
12  **III. "Second Request For Judicial Notice" and Motion For Leave To File Supplemental Memorandum**

13  Plaintiffs' Second Request For Judicial Notice (Doc. 124) will be granted and

14  Plaintiffs' Motion For Leave To File Supplemental Memorandum will be denied (Doc. 125).

15  Plaintiffs request judicial notice of an *amicus curiae* brief filed by the Secretary of the

16  Department of Labor in proceedings before the Ninth Circuit concerning whether a third-

17  party insurer is a proper defendant in a suit for unpaid employee welfare benefit plan benefits

18  pursuant to 29 U.S.C. § 1132(a)(1)(B), ERISA § 503(a)(1)(B) (Doc. 124 Ex. A).  See infra

19  Section IV.D.4.c.  The *amicus* brief is relevant to an issue currently before the Court, was

20  filed after the Response to the Motion to Dismiss was due, the contents are "not subject to

21  reasonable dispute," the brief itself is "capable of accurate and ready determination by resort

22  to sources whose accuracy cannot reasonably be questioned" and notice is unopposed.   Fed.

23  R. Evid. 201(b).  See also Serv. Employees Int'l Union Local 102 v. County of San Diego,

24  60 F.3d 1346, 1356 n.3 (9th Cir. 1994) (*per curiam*) (judicially noticing a relevant *amicus*

25  brief filed in other proceedings).

26  Nevertheless, Plaintiffs will not be allowed to file a supplemental brief to "analyze[]

27  the relevance" of the Secretary's *amicus* (Doc. 125 at 2).  The value of the Secretary's

28  *amicus* is evident on its face and is not new authority.  If this matter involved a question of

statutory interpretation that was unsettled in the Ninth Circuit, the Secretary's opinion might carry some authoritative weight. See e.g. U.S. v. Mead Corp., 121 S. Ct. 2164, 2175 (2001) (an executive determination that Congress did not intend to carry the force of law, such as a policy statement, enforcement guideline, or other legal interpretation, may receive some deference); see also infra note 9. However, Plaintiffs urge the Court to consider the *amicus* as authority contrary to Ninth Circuit interpretation of ERISA, arguing a § 1132(a)(1)(B) plaintiff may sue a third-party insurer that is neither an employee welfare benefit plan nor a plan administrator for wrongfully denied benefits. But see Everhart v. Allmerica Fin. Life Ins. Co., 275 F.3d 751, 754 (9th Cir. 2001) (a plaintiff cannot sue a third-party insurer under § 1132(a)(1)(B) that is neither an employee welfare benefit plan nor a plan administrator). In fact, the Secretary concludes the contrary is Ninth Circuit law (Doc. 124 Ex. A at 5-8). Although judicial deference to executive construction of a statute may be relevant to interpreting ambiguous statutes, the "judiciary is the final authority on issues of statutory construction" and in this case the judiciary has spoken. Chevron U.S.A., Inc. v. Natural Res. Def. Council, 104 S. Ct. 2778, 2782 n.9 (1984). Thus, the *amicus* is advisory and no further analysis from the parties is necessary.

**IV. Motion To Dismiss**

**A. Standard**

Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") permits challenge of a complaint for "failure to state a claim upon which relief can be granted." A court's inquiry "is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008). However, a court "need not accept as true allegations contradicting documents that are referenced in the complaint or that are properly subject to judicial notice." Id. See also Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001) (identifying "two exceptions to the requirement that consideration of extrinsic evidence converts a 12(b)(6)

1  motion to a summary judgment motion" – material subject to judicial notice and material

2  attached to or referenced in the complaint).  Consideration of materials incorporated by

3  reference in the complaint is permitted when "plaintiff's claim depends on the contents of a

4  document, the defendant attaches the document to its motion to dismiss, and the parties do

5  not dispute the authenticity of the document."  Knievel v. ESPN, 393 F.3d 1068, 1076 (9th

6  Cir. 2005).

7  Federal Rule of Civil Procedure 8(a)(2) ("Rule 8(a)(2)") provides the yardstick for

8  determining the sufficiency of a complaint in a Rule 12(b)(6) analysis.  According to Rule

9  8(a)(2), a proper claim for relief need only contain "a short and plain statement of the claim

10  showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The Supreme Court

11  has interpreted Rule 8(a)(2) to require that a plaintiff's "[f]actual allegations must be enough

12  to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 127 S.Ct.

13  1955, 1965 (2007).  The Bell Atlantic standard requires neither "heightened fact pleading of

14  specifics" nor "detailed factual allegations," but a plaintiff cannot rely on "labels and

15  conclusions, and a formulaic recitation of the elements of a cause of action."  Id. at 1964-65,

16  1974.  In this way, while "[s]pecific facts are not necessary," a plaintiff must allege enough

17  facts to "give the defendant fair notice of what the ... claim is and the grounds upon which

18  it rests."  Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007) (*per curiam*) (internal citation

19  omitted).

20  The defendant bears the burden of proving plaintiff has failed to state a claim.  See

21  e.g. Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005); Bangura v. Hansen, 434 F.3d 487, 498

22  (6th Cir. 2006); James Wm. Moore, 2 Moore's Federal Practice § 12.34[1][a] at 12-73. (2008

23  ed.).

24

25

26

27  **B. Standing**

28

**1. ACS' Association Standing**

Plaintiffs argue for association standing on the theory that ACS represents the interest of its member physicians who provided services to Plan participants and beneficiaries (i.e. patients) and have been assigned the right to sue the Plans for wrongfully denied compensation by the participants and beneficiaries (Doc. 38 at 7-8, 29).[2] Defendants contend ACS cannot assert association standing and thus must be dismissed (Doc. 110 at 31-33).[3]

To assert association standing, ACS must satisfy a three-prong test, showing:

> (a) its members would otherwise have standing to sue in their own right;
> (b) the interests it seeks to protect are germane to the organization's purpose; and
> (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.
> Hunt v. Wash. State Apple Advertising Com'n, 97 S.Ct. 2434, 2441 (1977).

The burden of proof to show standing is on ACS. See Loritz v. U.S. Ct. of App. for the 9th Cir., 382 F.3d 990, 991 (9th Cir. 2004) ("Article III of the Constitution requires a plaintiff attempting to invoke the jurisdiction of the federal courts to demonstrate that he has standing.").

ACS' compliance with all three prongs of the Hunt test is contested. Challenging prongs one and two, Defendants argue ACS members lack the independent right to participate in this action and the interest ACS seeks to protect is not germane to the organization's purpose (Doc. 110 at 33). Both arguments are unavailing. As discussed

---

[2]Because ACS member physicians do not have an independent right of action under ERISA, they may only pursue ERISA claims if a Plan participant or beneficiary assigns each physician the right to collect the disputed compensation. See Misic v. Bldg. Serv. Employees Health and Welfare Trust, 789 F.2d 1374, 1378 (9th Cir. 1986) (per curiam) ("ERISA provides civil actions may be brought under the statute by participants, beneficiaries, fiduciaries, and the Secretary of Labor," not service providers) (citing 29 U.S.C. § 1132(a))..

[3]Defendants assert ACS may only participate in the present action via derivative standing. Plaintiffs do not contest this issue.

1    above in note 2, if participants and beneficiaries have assigned to ACS member physicians

2    the right to sue for unpaid Plan compensation, the physicians have independent standing. See

3    Misic, 789 F.2d at 1378. These allegations are sufficiently pled in the Complaint to satisfy

4    the first prong (Doc. 38 at 7-8, 29). Furthermore, ensuring proper compensation for ACS

5    member physicians is germane to ACS' organizational purpose. This allegation is

6    sufficiently pled in the Complaint to satisfy the second prong (Doc. 38 at 7-8). While

7    Defendants would have preferred the Complaint to include more factual details concerning

8    the first and second prongs, as discussed below in Section IV.C.2, such detail is not required

9    at the pleading stage.[4]

10   Defendants next argue the requested relief, which includes retrospective monetary

11   damages, causes ACS to fail the third prong of the Hunt test because the determination of

12   money damages will require participation of all ACS member physicians. See Warth v.

13   Seldin, 95 S.Ct. 2197, 2214 (1976) ("[T]o obtain relief in damages, each member of [Plaintiff

14   Association] who claims injury as a result of respondents' practices m[u]st be a party to the

15   suit, and [Plaintiff Association] has no standing to claim damages on his behalf.") (emphasis

16   added). To the extent ACS is seeking monetary damages, Defendants are correct. However,

17   ACS is also seeking equitable relief, that is, a declaration or injunction requiring Defendants

18   to pay benefits according to the terms of the Plans (Docs. 38 at 46-48; 112 at 33). The

19   participation of ACS membership will not likely be necessary to implement these requested

20   remedies. See Id. at 2213-14 ("If in a proper case the association seeks a declaration,

21   injunction, or some other form of prospective relief, it can reasonably be supposed that the

22

23

24         [4] Defendants argue the Complaint's simple statement affirming the germaneness of this
25   action to ACS' organizational purpose, without more, is insufficient to satisfy the second prong
     (Doc. 110 at 33). See Helmet Law Def. League v. Cal. Highway Patrol, 122 F.3d 1071, 2007 WL
26   547956, *1-2 (9th Cir. 1997). Even if the Court were to consider Helmet Law Def. League, despite
     its status as an eleven-year-old unpublished opinion, the decision's persuasive appeal is not great,
27   given the short and unreasoned paragraph analyzing the contested issue. The relationship of ACS'
     organizational purpose to the subject of the action is obvious, even if not spelled out with great detail
28   in the Complaint.

1    remedy, if granted, will inure to the benefit of those members of the association actually

2    injured" and not require "individualized proof").[5]

3        Defendants further argue ACS' claim fails the third prong because ACS must prove

4    each member physician has in fact received an assignment from a Plan participant or

5    beneficiary and thus cannot prevail without "the participation of individual members in the

6    lawsuit." Hunt, 97 S.Ct. at 2441; see also Misic, 789 F.2d at 1378. Although Defendants

7    cite an unpublished, out-of-circuit case to support this position, it is directly on point and

8    persuasive. See Am. Med. Ass'n v. United HealthCare Corp., 2007 WL 1771498, *22

9    (S.D.N.Y. 2007) ("[T]he Medical Association Plaintiffs must still show receipt of valid

10   assignments to proceed in their ERISA claims . . .because to make such showings [Plaintiffs]

11   would be forced to rely on participation by their members, the Court finds that [Plaintiffs]

12   fail the third prong of the *Hunt* test"). Plaintiffs respond that individualized proof will not

13   be required because all necessary evidence to prove assignment is in the control of

14   Defendants, will be the subject of discovery in this litigation, and need not involve

15   participation by all ACS members (Doc. 112 at 35). The Complaint alleges the same (Doc.

16   38 at 8).

17       Plaintiffs' ability to obtain the necessary evidence of assignment without involving

18   every ACS member is questionable. However, Rule 12 (b)(6) requires all reasonable factual

19   inferences to be interpreted in Plaintiffs' favor. See Lazy Y Ranch Ltd., 546 F.3d at 588.

20   (When adjudicating a Rule 12(b)(6) motion, "allegations in the complaint . . are accepted as

21   true and construed in the light most favorable to the plaintiff."); see also Pa. Psychiatric

22

23   _____

24       [5] Cf. Lake Mohave Boat Owners Ass'n v. Nat'l Park Serv., 78 F.3d 1360, 1367 (9th Cir.
     1995) (denying an association plaintiff standing in a suit for collection of equitable restitution on
25   behalf of association members, because "whatever injury may have been suffered is peculiar to the
     individual member concerned, and . . . would require individualized proof."); Harris v. McRae, 100
26   S.Ct. 2671, 2690 (1980) (applying same logic to deny standing to an association plaintiff seeking
     injunctive relief pursuant to the free exercise clause, because each group member's particular
27   religious beliefs would be different and require a unique remedy).

28

Soc'y. v. Green Spring Health Serv.'s, Inc., 280 F.3d 278, 286-87 (3d Cir. 2002) (upholding an association's standing against a Rule 12(b)(6) motion, despite questions concerning plaintiff's ability in fact to maintain standing without involving all association members, because facts must be interpreted in plaintiff's favor).  Furthermore, the threshold for satisfying the third prong of Hunt is not high, requiring Plaintiffs to show only that "participation by *each allegedly injured party* would not be necessary." Hosp. Council of W. Pa. v. City of Pittsburgh, 949 F.2d 83, 90 (3d Cir. 1991) (citing Warth, 95 S. Ct. at 2211-12) (emphasis added); accord Retired Chicago Police Ass'n v. City of Chicago, 7 F.3d 584, 601-02 (7th Cir. 1993).  Thus, even if ACS' claim required participation of most association members, the third prong would be satisfied as long as the participation of *each*  member is not required.  Accordingly, ACS' standing will be upheld.

**2. ACS' Third-Party Standing**

Because ACS' association standing will be upheld, the challenge to ACS' third-party standing will not be reached.

**3. Spinedex's Derivative Standing**

According to Plaintiffs, Spinedex may assert standing on behalf of its patients who are Plan participants or beneficiaries and assigned to Spinedex the right to collect wrongfully denied Plan compensation.  Defendants respond that six of the Plan policies contain non-assignment clauses and thus Spinedex cannot sue for compensation originating from the six Plans (Doc. 110 at 34-35).[6]  See Davidowitz v. Delta Dental Plan of Cal., Inc., 946 F.2d 1476, 1480-81 (9th Cir. 1991) (non-assignment clauses are enforceable under ERISA and will preclude assignment of Plan rights).  In support, Defendants have submitted six Plan policy documents with the Motion To Dismiss.  Because the Complaint depends upon the

---

[6]Defendants contend Spinedex may only participate in the present action via derivative standing. Plaintiffs do not contest this issue.

construction of these documents to establish Spinedex's standing, they may be considered (Doc. 38 at 22-23, 29).  See Lazy Y Ranch Ltd, 546 F.3d at 588 (When adjudicating a motion to dismiss, a court "need not accept as true allegations contradicting documents that are referenced in the complaint");  Knievel, 393 F.3d at 1076 (Consideration of materials incorporated by reference in the complaint is permitted when "plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document.").  The policy documents are authenticated with an affidavit from Defense counsel and Plaintiffs have not properly objected to their authenticity (Doc. 104).

Five of the six non-assignment clauses contain broad exceptions.  See Doc. 104 Ex. U at 47 ("You may not assign your Benefits under the Plan to a non-Network provider *without our consent*) (emphasis added); Ex. O 2002 Amendment at 14 (same); Ex. N 2002 Amendment at 14 (same); Ex. T 2002 Amendment (same); Ex. V at 5 ("*Except as expressly authorized by this Program* or as required to comply with the legally applicable provisions of a Qualified Medical Child Support Order . . . benefits, claims, coverage or other interests in the Program may not be assigned . . .") (emphasis added).  Whether the above exceptions apply to the disputed Spinedex assignments is a question of fact not addressed by the Motion To Dismiss.  Only one of the six non-assignment clauses is unconditional: "[Y]ou cannot sell, transfer, or assign the value of your benefit under the Plan;" "Reimbursement of the scheduled amount for covered services is made to the covered participant and is not assignable to the provider" (Doc. 104 Ex. L at 82, 50).  In this way, Defendants only show that Spinedex cannot pursue claims on behalf of Plan participants or beneficiaries in the Honeywell International, Inc. Group Health Plan (Doc. 104 Ex. L).

Plaintiffs respond that Defendants' argument fails because it involves a question of evidentiary proof inappropriate on a motion to dismiss (Doc. 112 at 35).  However, extrinsic evidence, if properly submitted, may be considered on a motion to dismiss.  See Lazy Y Ranch Ltd, 546 F.3d at 588;  Knievel, 393 F.3d at 1076.  Plaintiffs next argue Defendants

may have submitted the incorrect plan documents (Doc. 112 at 35). The Response provides no evidence to support this argument. Lastly, Plaintiffs argue the Defendants' inconsistent administration of the Honeywell Group Health Plan negates the non-assignment clause (Doc. 112 at 35). Yet, Plaintiffs' cited law, a section from the Code of Federal Regulations, does not support the argument. See 29 C.F.R. § 2560.503-1(b)(5).[7]

Accordingly, Spinedex has no standing to assert claims on behalf of participants or beneficiaries in the Honeywell Group Health Plan. Spinedex and ACS otherwise have standing.

**C. Factual Challenges**

**1. Plan Defendants**

Defendants contend the Complaint "does not describe any conduct in which the Plan Defendants engaged" and thus allegations against the Plan Defendants should be dismissed for failure to state a claim (Doc. 110 at 6). See Bell Atl. Corp., 127 S.Ct. at 1955. The Court agrees and the Plan Defendants will be dismissed.

Plaintiffs are suing the Plan Defendants to recover improperly denied health care benefits and clarify prospective rights under the Plans (Doc. 38 at 44-45). See 29 U.S.C. § 1132(a)(1)(B); Everhart, 275 F.3d at 754 (an employee welfare benefit plan is a proper defendant in a § 1132(a)(1)(B) action). Yet the Complaint does not ascribe any act or commission to the Plan Defendants. Plaintiffs attempt to remedy this omission by arguing for the Plan Defendants to be held liable for the actions of the United Defendants because "[a] plan acts through its fiduciaries" (Doc. 112 at 5). Plaintiffs are correct that employee

---

[7]The cited regulatory provision merely says: "The claims procedures for a plan will be deemed to be reasonable only if [t]he claims procedures contain administrative processes and safeguards designed to ensure and to verify that benefit claim determinations are made in accordance with governing plan documents and that, where appropriate, the plan provisions have been applied consistently with respect to similarly situated claimants." 29 C.F.R. § 2560.503-1(b)(5).

welfare benefit plans generally act through fiduciaries or administrators (Doc. 112 at 5). However, Plaintiffs cite no authority for the position that a plan is vicariously liable for the acts of a fiduciary or administrator.    To the contrary, if a plan administrator is solely responsible for a § 1132(a)(1)(B) violation, the plaintiff must sue the administrator for redress, not the plan, to receive damages from the responsible party and prevent future violations.  See Jayne E. Zanglein & Susan J. Stabile, ERISA Litigation § 7.III.A at 207 (2005 ed.) ("[M]ost courts have held that, to be sued under Section [1132](a)(1)(B), the person must have some control over plan administration."); Garren v. John Hancock Mut. Life Ins. Co., 114 F.3d 186, 187 (11th Cir. 1997) ("The proper party defendant in an action concerning ERISA benefits is the party that controls administration of the plan."); Everhart, 275 F.3d at 754 (citing Garren with approval).

Because Plaintiffs allege not a single act committed by the Plan Defendants, the proper subject of the § 1132(a)(1)(B) claim is the United Defendants, the parties which committed all the allegedly wrongful actions and which Plaintiffs claim are liable as administrators of the Plans.  To adopt Plaintiffs' theory of vicarious liability would serve only to expose the Plan Defendants to liability for acts in which they did not participate and punish blameless parties.  Plaintiffs' claim against the Plan Defendants will thus be dismissed.

**2. United Defendants**

Defendants also contend Plaintiffs fail to state a claim against the United Defendants, per Bell Atlantic (Doc. 110 at 7-11). See 127 S.Ct. at 1955.

Defendants argue "Plaintiffs improperly conflate the various defendants" and fail to offer allegations pertaining to each United Defendant in its individual capacity (Doc. 110 at 8).  The argument is without merit.  The Complaint lays out facts in sufficient detail to establish the United Defendants' status as fiduciaries and administrators of the Plans as well as corresponding breaches of duty owed to Plaintiffs by each United Defendant, usually all

1   five.   Although Defendants are correct that the allegations generally do not distinguish

2   between the five United Defendants, this failure is not fatal.  According to the Complaint, the

3   United Defendants are connected through a complex series of corporate relationships –

4   linking each to the other as parent, subsidiary or affiliate – relationships which Plaintiffs have

5   yet to fully disentangle (Docs. 38 at 10-12; 112 at 10-11; 116 Ex. E).  Yet, the Complaint is

6   sufficient to "give the defendant[s] fair notice of what [each] ... claim is and the grounds

7   upon which it rests."  Erickson, 127 S.Ct. at  2200 (internal citation omitted).  To demand

8   that Plaintiffs parse through the complex corporate web uniting the United Defendants would

9   effectively require a "heightened fact pleading of specifics" and "detailed factual

10   allegations," both of which Bell Atlantic rejected.  127 S.Ct. at 1964-65, 1974.

11       Defendants further argue "Plaintiffs' failure to provide even the most basic

12   information as to the timing of the events from which their claims arise improperly hinders

13   the Defendants' ability to discern whether Plaintiffs' claims may be barred by a limitations

14   period," suggesting the omission renders the Complaint fatally defective (Doc. 110 at 11).

15   The Court does not agree.  The Complaint includes a satisfactory date range – the " six years

16   prior to March 7, 2008 " (Doc. 38 at 29).  Plaintiffs are not required to plead dates with

17   sufficient detail to assist Defendants with an affirmative defense.  See Fed. R. Civ. P. 8(c)

18   (placing the burden of raising an affirmative defense on the defendant); U.S. v. McGee, 993

19   F.2d 184, 187 (9th Cir. 1993) (A plaintiff "is not required to plead on the subject of an

20   anticipated affirmative defense.").  Even if the pled date range leaves Defendants unsure as

21   to whether the statute of limitations applies, Defendants need only raise the defense in the

22   most summary  manner to preserve it.  See Wyshak v. City Nat'l Bank, 607 F.2d 824,

23   827 (9th Cir. 1979) (requiring a minimal statement in the answer to preserve an affirmative

24   defense).  In this way, Defendants' Bell Atlantic challenge seeking to dismiss the United

25   Defendants fails.

26

27

28

**D. Legal Challenges**

**1. Count I – Breach of Fiduciary Duty**

a. Plaintiffs' Causes of Action

Count I alleges the United Defendants are administrators and fiduciaries of the Plans and breached the duty to administer the Plans "solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1), ERISA § 404(a)(1). Three categories of fiduciary breach are asserted: (1) failure to properly determine Plan participants' and beneficiaries' benefits claims (Doc. 38 at ¶ 112-16), (2) failure to provide Plan participants and beneficiaries with requested information (Doc. 38 at ¶ 118), and (3) improper delegation of Plan administrative duties (Doc. 138 at ¶ 117).[8]

Title 29 U.S.C. § 1109(a), ERISA § 409(a), establishes liability and damages:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

Title 29 U.S.C. § 1132(a)(2), ERISA § 503(a)(2) establishes the cause of action: "A civil action may be brought . . . by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title." Title 29 U.S.C. § 1132(a)(3), ERISA § 503(a)(3) provides an alternative cause of action: "A civil action may be brought . . . by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this

---

[8] Plaintiffs specifically contend the United Defendants did not administer the Plans "for the exclusive purpose of: providing benefits to participants and their beneficiaries; and defraying reasonable expenses of administering the plan . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims . . . [and] in accordance with the documents and instruments governing the plan . . . " 29 U.S.C. §§ 1104(a)(1)(A)-(B), (D).

1   subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to
2   redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the
3   plan" (Doc. 112 at 17-18).  Count I alleges causes of action under  §§ 1132(a)(2)-(a)(3).

4

5   b. Motion to Dismiss

6       The breach of fiduciary duty claim is challenged on three grounds.  First, Defendants
7   argue none of the factual allegations pled by Plaintiffs, that is factual allegations (1)-(3)
8   above,  implicate a fiduciary duty contemplated by § 1104 (Docs. 110 at 12-13, 15; 123 at
9   6-7).  Second, Defendants argue §§ 1132(a)(2)-(a)(3) are improper causes of action because
10  Plaintiffs may only sue under §§ 1132(a)(2)-(3) if no other subsection of § 1132 applies to
11  the factual allegations and, according to Defendants, other subsections of  § 1132 are
12  applicable (Docs. 110 at 13-15; 123 at 4-5).  Third, Defendants argue in the alternative §
13  1132(a)(2) is an improper cause of action because it requires Plaintiffs to plead harm to a
14  Plan itself and the factual allegations only plead harm to Plan participants and beneficiaries
15  (Doc. 123 at 5-6).

16
17  i. Fiduciary Duty Challenge

18      Defendants first argue claims determination is not a fiduciary duty contemplated in
19  § 1104, but rather is an administrative duty, citing ERISA's distinction of fiduciary duties
20  from claims administration duties (Doc. 123 at 6).  See Mass. Mut. Life Ins. Co. v. Russell,
21  105 S. Ct. 3085, 3090-91 (1985) (noting the statutory division between fiduciary duties, 29
22  U.S.C. §§ 1101-1114, and claims administration duties, 29 U.S.C. §§ 1132(a)-1133).  In
23  support, Defendants also cite Jebian v. Hewlett-Packard Co. Employee Benefits Org. Income
24  Prot. Plan, 349 F.3d 1098, 1105 (9th Cir. 2003) and Blau v. Del Monte Corp., 748 F.2d 1349,
25  1353 (9th Cir. 1985).  Yet, Massachusetts Mutual recognizes "a plan administrator's refusal
26  to pay contractually authorized benefits," if "willful and part of a larger systematic" design,
27  could constitute a "breach of fiduciary obligations."  105 S. Ct. at 3092; see also Metro. Life
28  Ins. Co. v. Glenn, 128 S.Ct. 2343, 2350 (2008) (ERISA "sets forth a special standard of care

1    upon a plan administrator, namely, that the administrator 'discharge [its] duties' in respect

2    to discretionary claims processing 'solely in the interests of the participants and

3    beneficiaries' of the plan") (citing 29 U.S.C. § 1104(a)(1)); 29 C.F.R. § 2509.75-8

4    (describing "the final authority to authorize or disallow benefit payments in cases where a

5    dispute exists as to the interpretation of plan provisions" as a fiduciary responsibility).[9]

6    Jebian and Blau are distinguishable, as they hold an individual's claim to wrongfully denied

7    benefits does not implicate a fiduciary duty, while Plaintiffs' fiduciary duty claim alleges a

8    systematic failure to properly determine benefits, as described in Massachusetts Mutual.

9    Accordingly, Plaintiffs' allegations of improper claims determination implicate an ERISA

10   fiduciary duty.

11       Defendants next argue the United Defendants' failure to reasonably delegate Plan

12   administration responsibilities to an appropriate third-party does not implicate a fiduciary

13   duty contemplated in § 1104.  This argument is also unavailing.  While Defendants cite no

14   law supporting this position, Plaintiffs do (Doc. 110 at 15).  See e.g. Donovan v. Mazzola,

15   716 F.2d 1226, 1233-34 (9th Cir. 1983) (an employee welfare benefit plan administrator's

16   decision to hire an unqualified consultant to help administer the plan breached a fiduciary

17   duty under § 1104(a)); Pilkington PLC v. Perelman, 72 F.3d 1396, 1397-98 (9th Cir. 1995)

18   (plan administrator's delegation of certain benefit disbursement responsibilities to a third-

19   party, when guided by improper motivation, breached a fiduciary duty under § 1104(a)).

20       Settled law has also determined that a plan administrator's failure to disclose required

21   documents implicates a fiduciary duty contemplated by § 1104.  See Hughes Salaried

22   Retirees Action Comm. v. Adm'r of Hughes Non-Bargaining Ret. Plan, 72 F.3d 686,

23   693 (9th Cir. 1995) (en banc) (failure to disclose information is a fiduciary duty covered

24

25   _____

26       [9] See also 29 U.S.C. 1104(b), (c) (establishing the Secretary of Labor as the administrator
     of the ERISA fiduciary responsibility statute by empowering the Secretary to issue interpretive

27   regulations); Chevron U.S.A., Inc., 104 S. Ct. at 2782-83 (requiring judicial deference to an
     executive agency's plausible interpretation of a statute, if the agency is designated by Congress as

28   the statute's administrator).

1   under § 1104(a) if the information "relates to the provision of benefits or the defrayment of
2   expenses").

3   ii. Challenge to Application of §§ 1132(a)(2)-(3)

4
5          Defendants next argue §§ 1132(a)(2)-(3) are inappropriate causes of action to seek
6   redress for the alleged breaches of fiduciary duty because §§ 1132(a)(2)-(3) may only be
7   invoked if no other § 1132 cause of action is applicable (Docs. 110 at 13-15; 123 at 4-5).

8          With respect to § 1132(a)(3), Defendants are correct.  The Supreme Court has
9   interpreted this cause of action as a "catchall" provision or "a safety net, offering appropriate
10  equitable relief for injuries caused by violations that [§ 1132 *does not elsewhere adequately*
11  *remedy*."  Varity Corp. v. Howe, 116 S.Ct. 1065, 1078 (1996) (emphasis added).  All three
12  of the factual allegations are more appropriate for resolution under different § 1132 causes
13  of action and thus cannot be the foundation for the § 1132(a)(3) claim.

14         Plaintiffs may more appropriately seek to remedy improperly determined claims via
15  § 1132(a)(1)(B), a cause of action "to recover benefits due to [a participant or beneficiary]
16  under the terms of his plan, to enforce [] rights under the terms of the plan, or to clarify []
17  rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).  See also
18  Johnson v. Buckley,  356 F.3d 1067, 1077-78 (9th Cir. 2004) ("[W]hen relief is available
19  under section 1132(a)(1), courts will not allow relief under § 1132(a)(3)'s 'catch-all'
20  provision.'") (quoting Varity, 116 S.Ct. at 1078).  As discussed below in Subsection iii,
21  Plaintiffs may also seek redress for improperly determined claims via § 1132(a)(2).  See
22  Bowles v. Reade, 198 F.3d 752, 759-60 (9th Cir. 1999) (applying same logic to prohibit a
23  § 1132(a)(3) cause of action that could have been brought under § 1132(a)(2)).  Thus, §
24  1132(a)(3) is inappropriate for the claims determination allegations

25         Plaintiffs may more appropriately seek redress for the alleged failure to disclose
26  information via § 1132(c).  See 29 U.S.C. § 1132(c) (an administrator "who fails or refuses
27  to comply with a request for any information which such administrator is required by this

28

subchapter to furnish to a participant or beneficiary . . . may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.").

Lastly, as discussed below in Subsection iii, Plaintiffs may seek redress for the improper delegation of Plan administrative duties under § 1132(a)(2).  See Bowles, 198 F.3d at 759-60.

Plaintiffs respond that Federal Rule of Civil Procedure 8(d)(2)-(3) permits raising § 1132(a)(3) claims in the alternative (Doc. 112 at 17 n.27).  To the extent Plaintiffs' reading of the Federal Rules of Civil Procedure is at odds with Supreme Court and Ninth Circuit interpretations of ERISA, it is not persuasive.  The § 1132(a)(3) cause of action in Count I will thus be dismissed.

Defendants also argue § 1132(a)(2) is an inappropriate cause of action for the claims determination and information disclosure allegations, which should be raised under § 1132(a)(1)(B) and § 1132(c), respectively, because a cause of action under § 1132(a)(2) should only be allowed if no other cause of action is available under § 1132 (Doc. 123 at 4-5).  Defendants offer no legal support for this position.  Section 1132(a)(2) is not a catch-all or safety net provision, but rather is a distinct cause of action designed to redress a breach of fiduciary duty that has harmed a plan.  See Cinelli v. Sec. Pac. Corp., 61 F.3d 1437, 1445 (9th Cir. 1995) (section 1132(a)(2), read with its companion section 29 U.S.C. § 1109, "only allows recovery for injury to the plan itself," not for injury to a beneficiary or a class of beneficiaries).  Accordingly, a plaintiff is permitted to file concurrent claims under § 1132(a)(1)(B) and § 1132(a)(2), to recover improperly denied benefits owed to the individual through § 1132(a)(1)(B) and seek additional redress for harms inflicted upon the plan through § 1132(a)(2).  Similar logic applies to concurrent suits under § 1132(c) and § 1132(a)(2), the former designed to remedy harms to an individual wrongfully denied information and the

1  latter designed to remedy harms suffered by the plan as a whole.  Thus, Plaintiffs' §

2  1132(a)(2) cause of action will not be dismissed on this ground.

3

4  iii. Challenge to Application of § 1132(a)(2)

5       Defendants, in the alternative, argue Plaintiffs may not seek relief under § 1132(a)(2)

6  because the provision requires allegations of harm suffered by a plan and, according to

7  Defendants, the Complaint only alleges harm suffered by a class of individuals, not the Plans

8  (Docs. 110 at 15 n.16; 123 at 5-6).

9       An action under § 1132(a)(2) must allege an injury and a remedy corresponding to a

10  plan.  See 29 U.S.C. § 1132(a)(2) ("A civil action may be brought . . . by a participant,

11  beneficiary or fiduciary for appropriate relief under section 1109 of this title"); Cinelli, 61

12  F.3d at 1445 ("We recently clarified that 29 U.S.C. § 1109 governing liability for breach of

13  fiduciary obligations under ERISA *only allows recovery for injury to the plan itself.*")

14  (emphasis added).  Suits by individuals or classes of individuals to compel payment of

15  improperly denied claims or adherence to plan obligations do not meet this threshold.  See

16  Ford v. MCI Commc'ns Corp. Health and Welfare Plan, 399 F.3d 1076, 1082 (9th Cir. 2005)

17  (an individual is "foreclosed from seeking and receiving an individual remedy for damages

18  under 29 U.S.C. § 1109(a) because that type of remedy is not consistent with ERISA's

19  emphasis on the relationship between a fiduciary and the employee benefit plan as a whole.")

20  (internal citation omitted); Cinelli, 61 F.3d at 1445 (same analysis for class actions).

21  However, individuals may sue for breach of fiduciary duty on behalf of a plan if the rights

22  of plan participants and beneficiaries are violated in a willful and systematic way and

23  remedies are sought to redress harms caused to the plan.  Mass. Mut. Ins. Co., 3085 S. Ct.

24  at 3092 ("If the plan administrator's refusal to pay contractually authorized benefits had been

25  willful and part of a larger systematic breach of fiduciary obligations," an individual plaintiff

26  may seek appropriate remedies for the benefit of the plan, such as removal of the

27  administrator, "pursuant to §§ [1132(a)(2)] and [1109].").

28

Concerning the United Defendants' alleged failure to disclose required information, Plaintiffs do not sufficiently plead the harm that such failure has inflicted on the Plans and thus this allegation is inappropriate for § 1132(a)(2). Cinelli, 61 F.3d at 1445 ("We recently clarified that 29 U.S.C. § 1109 governing liability for breach of fiduciary obligations under ERISA only allows recovery for injury to the plan itself."). Plaintiffs' *post hoc* explanation that "requiring the United Defendants to furnish documents required to be provided under ERISA also benefits the Plans because it allows for more efficient administration of the Plans and the fulfillment of their purpose" is not mentioned in the Complaint and is not persuasive (Doc. 112 at 19).

The United Defendants' alleged improper denial of claims and negligent delegation of administrative duties, however, were willful and systematic, as contemplated in Massachusetts Mutual, and thus are appropriate bases for a § 1132(a)(2) claim. The Complaint alleges a systematic effort by the United Defendants to improperly delay or deny benefit claims filed by Plan participants and beneficiaries (Doc. 38 at 36-41). The Complaint also alleges United Defendants delegated administration of the Plans' provider compensation rates to a third party with the intent to miscalculate the rates and insufficiently compensate providers for properly performed services (Doc. 38 at 41-42). According to the Complaint, this systematic denial of benefits and undercompensation of providers constitutes a breach of fiduciary duty harmful to the Plans (Doc. 38 at 42-43).

Defendants respond that Plaintiffs offer only "conclusory allegation[s]" concerning harms inflicted upon the Plans. (Doc. 110 at 15 n.16). The Court disagrees. Under Plaintiffs' theory, "[m]onies payable as reimbursement for covered health care benefits under an employee welfare benefit plan become plan assets within a reasonable time after the responsible fiduciary knew, or should have known, that" the benefit or compensation was owed to the plan participant or beneficiary (Doc. 38 at 43). Thus, when the United Defendants willfully and systematically failed to disburse benefits rightly payable to Plan participants and beneficiaries, this money became Plan assets and Defendants converted the

1    assets by failing to disburse them as required by the terms of the Plans (Doc. 38 at 42-44).

2    Similarly, when the United Defendants negligently delegated Plan administration

3    responsibilities to a third party that insufficiently compensated Plan service providers, the

4    monies that should have been disbursed to the providers were Plan assets which Defendants

5    converted (Doc. 38 at 42-44).  While Plaintiffs' theories of asset transfer between the United

6    Defendants and the Plans and corresponding financial harm suffered by the Plans are novel,

7    they are not conclusory.  Because neither party sufficiently briefed the issue and the burden

8    of the motion rests on Defendants, Plaintiff's theories will be allowed to stand until properly

9    argued in future proceedings.[10]

10        Furthermore, the requested remedies bolster the argument that Plaintiffs, at least in

11   part, seek to redress harms inflicted upon the Plans.  See Horan v. Kaiser Steel Ret. Plan, 947

12   F.2d 1412, 1417-18 (9th Cir. 1991) (courts distinguish what types of actions implicate harm

13   to a plan from those merely alleging harm to an individual or class of individuals by

14   examining the requested remedy).  Here, Plaintiffs seek injunctive relief to prevent the

15   United Defendants from serving as Plan administrators and fiduciaries or, in the alternative,

16   compel them to honor the terms of the Plans (Doc. 38 at 48 ¶ 10, 11).  Such injunctive relief

17   falls squarely within the terms of § 1109, implicating both a breach of fiduciary duty and

18

19        [10]Plaintiffs do offer Ninth Circuit precedent interpreting a different ERISA fiduciary duty
20   provision, 29 U.S.C. § 1106, and suggesting a broad definition of what constitutes a plan asset
     supportive of Plaintiffs' theory that monies properly payable to Plan participants or service providers
21   are Plan assets.  See Acosta v. Pac. Enter.'s, 950 F.2d 611, 620 (9th Cir. 1991) ("Appellees argue
     that the term 'assets of the plan' encompasses only financial contributions received by the plan
22   administrators. We decline to cabin the term in such a restricted definition. Congress' imposition
     of a broad duty of loyalty upon fiduciaries of employee benefit plans counsels a more functional
23   approach."); Kayes v. Pac. Lumber Co., 51 F.3d 1449, 1467 (9th Cir. 1995) ("Therefore, in this
     circuit there is a twofold functional test as to whether an item in question constitutes an 'asset of the
24   plan': (1) whether the item in question may be used to the benefit (financial or otherwise) of the
     fiduciary, and (2) whether such use is at the expense of the plan participants or beneficiaries.")
25   (citing Acosta).  At first blush, monies designated as payments to Plan participants, beneficiaries,
     or service providers and wrongfully held by a Plan administrator/fiduciary would seem to benefit
26   the fiduciary at the expense of Plan participants or beneficiaries, as required in Acosta and Kayes,
     and constitute a Plan asset, which may be converted.
27

28

harm to the Plans.  See 29 U.S.C. §1109(a) (an ERISA fiduciary in breach "shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary" to remedy the breach's impact on the plan).

Defendants, citing Cinelli, respond that the allegations and causes of action "impermissibly conflate[] harm to plan participants with harm to the plan itself" (Doc. 123 at 6).  61 F.3d at 1445.  Cinelli is distinguishable.  The plaintiffs in Cinelli clearly sought a remedy pertaining only to individual plan participants or beneficiaries and not to the plan itself.  See 61 F.3d at 1440 (plaintiff class sought benefits from improperly terminated life insurance plan); see also e.g. Huntsinger v. Shaw Group, Inc., 410 F. Supp. 2d 968, 974-75 (D. Or. 2006) (desired redress for ERISA fiduciary breach, although characterized as restitution to the plan, was improper because the remedy was actually individual compensation for improperly denied benefits);  Ehrman v. Standard Ins. Co., 2007 WL 1288465, *2 (N.D.Cal. 2007) (plaintiff's conclusory claim that the desired remedy would benefit the plan as a whole was undermined by the nature of the remedy – compensation for underpayment of benefits to plan participants and beneficiaries).  Here, Plaintiffs have described a reasonable theory through which the United Defendants' actions have harmed the Plans and seek remedies which clearly will benefit the Plans.  Cinelli is inapplicable.

In this way, the allegations concerning improper claims determinations and delegation of plan administrative duties are appropriate subjects for an action under § 1132(a)(2).

c. Conclusion

Accordingly, a § 1132(a)(2) cause of action alleging the improper determination of Plan benefit claims has been properly pled (Doc. 38 at ¶ 112-16).  A § 1132(a)(2) cause of action alleging the improper delegation of Plan administration duties has also been properly pled (Doc. 138 at ¶ 117).  Plaintiffs have failed to properly plead either a breach of fiduciary duty cause of action under § 1132(a)(3) or a § 1132(a)(2) cause of action alleging failure to disclose requested information (Doc. 138 at ¶ 117).

**2. Count II – Prohibited Fiduciary Transactions**

a. Causes of Action

Count II recasts the allegations of improper claims determination and delegation of Plan administrative duties as prohibited fiduciary transactions under 29 U.S.C. § 1106, ERISA § 406.  With respect to claims determination, Plaintiffs argue (1) the United Defendants systematically and willfully failed to pay Plan participants' and beneficiaries' claims; (2) the withheld funds were Plan assets; and (3) Defendants illegally loaned, transferred or retained  these assets, all of which are prohibited transactions under § 1106 (Doc. 38 at 43).  <u>See</u> 29 U.S.C. §§ 1106(a)(1)(B), (a)(1)(D), (b)(1).  With respect to the delegation of Plan administrative duties, Plaintiffs claim Defendants delegated the calculation of provider compensation rates to a third party for the improper purpose of underpaying the providers and generating revenue for Defendants (Doc. 38 at 43-44). According to Plaintiffs, the delegation constituted a "transaction involving the plan on behalf of a party . . . whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries" and thus was a prohibited transaction under 29 U.S.C. § 1106(b)(2).  Plaintiffs also claim the United Defendants are liable for the prohibited transactions as co-fiduciaries under 29 U.S.C. § 1105, ERISA § 405 (Doc. 38 at 44).

b. Motion to Dismiss

i. Section 1106 Claims

Defendants argue "Plaintiffs here have not alleged any transactions prohibited by ERISA § 406 [§ 1106]" (Doc. 110 at 17).  According to Defendants, the Supreme Court and Ninth Circuit have narrowly defined what constitutes a prohibited transaction and the allegations of flawed benefits determinations and provider compensation do not meet this definition (Doc. 110 at 16-17).  <u>See</u> <u>Lockheed Corp. v. Spink</u>, 116 S.Ct. 1783 (1996); <u>Wright v. Or. Metallurgical Corp.</u>, 360 F.3d 1090 (9th Cir. 2004).  Plaintiffs, distinguishing

1  Lockheed and Wright, respond that the Ninth Circuit's expansive definition of plan asset

2  under § 1106, as well as ERISA's broad remedial purpose, allows application of § 1106 to

3  the factual allegations (Doc. 112 at 20-24).

4          Neither Lockheed nor Wright specifically excludes all transactions involving benefits

5  determinations and provider compensation from the scope of § 1106, as argued by

6  Defendants.  See Lockheed, 116 S. Ct. 1791 (describing § 1106(a)(1) prohibited transactions

7  generally as "commercial bargains that present a special risk of plan underfunding because

8  they are struck with plan insiders, presumably not at arm's length"); Wright, 360 F.3d at

9  1101 (similar description of prohibited transactions under § 1106(b)).  While Lockheed holds

10 a fiduciary's payment of benefits pursuant to the terms of a plan may not constitute a

11 prohibited transaction, it is silent as to whether improper benefits determinations or provider

12 compensation, under different factual circumstances, could implicate a § 1106 prohibited

13 transaction.  See 116 S. Ct. at 1792 ("In short, whatever the precise boundaries of the

14 prohibition in [§ 1106(a)(1)(D)], there is one use of plan assets that it cannot logically

15 encompass: a *quid pro quo* between the employer and plan participants in which the plan

16 pays out benefits to the participants pursuant to its terms.").  Wright is also  silent on the

17 question of transactions involving benefits determinations or provider compensation and

18 simply holds a fiduciary's decision to lawfully maintain plan assets in a particular investment

19 is not a prohibited transaction.  See 360 F.3d at 1101.  While Defendants cite non-binding

20 precedent which exclude all transactions involving benefits determinations and provider

21 compensation from the scope of § 1106, these cases are short on justification and not

22 persuasive.[11]

23

24          [11]Defendants cite Francia v. Wonderoast, Inc. Profit Sharing Plan No. 001, 1995 WL 625705,

25 *14 (W.D.N.Y. 1995) and Andersen v. Chrysler Corp., 99 F.3d 846, 850 (7th Cir. 1996) for the
   position that denial of benefits cannot constitute a prohibited transaction under § 1106 (Docs. 110

26 at 17 n. 17; 123 at 7 n.12).  However, both courts' justifications for the cited legal conclusion
   amount to little more than *ipse dixit* logic and fail to convince the Court as to the propriety of the

27 holdings.  Defendants also cite Am. Med. Ass'n v. United Healthcare Corp., 2002 WL 31413668,

28 *10-11 (S.D.N.Y. 2002) for the position that improper determination of provider compensation rates

1      Given § 1106's remedial design and Congress' intent for ERISA to afford robust

2  protection to plan participants and beneficiaries, § 1106 must be read broadly.  See Leigh v.

3  Engle, 727 F.2d 113, 126 (7th Cir. 1984) ("[W]e believe that the protective provisions of [§

4  1106(a)(1)(D)] and (b)(1) should be read broadly in light of Congress' concern with the

5  welfare of plan beneficiaries. We read those provisions dealing with the use of plan assets

6  for the benefit of 'parties in interest' and plan fiduciaries as a gloss on the duty of loyalty

7  required by [29 U.S.C. § 1104]."); Acosta v. Pac. Enter.'s, 950 F.2d 611, 620 (9th Cir. 1991)

8  ("In light of Congress' overriding concern with the protection of plan participants and

9  beneficiaries, courts have generally construed the protective provisions of [§ 1106(b)]

10  broadly.") (citing Leigh with approval).  Under the Leigh and Acosta rubric, Plaintiffs

11  effectively plead the alleged facts into § 1106's prohibited transaction requirements.

12      Plaintiffs' characterization of improper benefits determinations and provider

13  compensation as loans, transfers, or retention of Plan assets is far from obvious.  Yet,

14  Plaintiffs provide legal support for the position that improperly withheld claims and provider

15  compensation are Plan assets and, from there, adequately allege the United Defendants

16  loaned, transferred, or retained these assets in contravention of § 1106 (Doc. 38 at 43-44).

17  See supra note 10.  Although Plaintiffs' use of § 1106 may be novel, Defendants have not

18  met the burden of demonstrating this application of § 1106 runs so contrary to established

19  law that Plaintiffs have failed to state a claim.  Thus, the § 1106 claim will be sustained.[12]

20

21

22

23  cannot constitute a prohibited transaction (Doc. 110 at 17).  This holding is unpersuasive because
    it is rooted in Second Circuit precedent construing § 1106 very narrowly, which the Ninth Circuit
24  has not adopted.

25      [12]Defendants also argue Plaintiffs' § 1106 allegations are deficient because they do not allege
    harm to any of the Plans (Doc. 112 at 17 n.18; 123 at 8 n.14).  While Defendants may or may not
26  be correct, the argument relies on factual details concerning how each Plan collects contributions
    and disburses benefits – i.e. whether the Plans are self-funded or fully-insured.  These facts are not
27  mentioned in the Complaint, nor do Defendants support the argument with citation to another
    appropriate factual source.  This argument must be saved until motion for summary judgment.
28

1    ii. Section 1105 Claim

2         Defendants' first argument for dismissing the § 1105 claim simply repeats the same

3    Bell Atlantic argument previously rejected above in Section IV.C.2, that the Complaint

4    "improperly lumps together several distinct entities without alleging any specific acts by

5    most of them tied to the administration or management of the benefit plan at issue" (Doc. 110

6    at 18).  Defendants' second argument is: "Plaintiffs fail[ed] to allege that any of the United

7    Defendants had knowledge of another fiduciary's breach, knowingly participated in or

8    concealed a breach by some other United Defendant, or enabled such a breach by an active

9    failure to comply with its own fiduciary obligations under the plan," as required by § 1105(a)

10   (Doc. 110 at 18).  As mentioned above in Section IV.C.2, Plaintiffs are still sorting through

11   the complex affiliations linking the United Defendants.  Plaintiffs have sufficiently pled facts

12   implicating the five United Defendants and put each on notice concerning potential exposure

13   to fiduciary liability.  To require Plaintiffs to plead as Defendants suggest, fleshing out the

14   specific relationships between each Defendant and differentiating those which actually

15   breached a fiduciary duty from those which were merely complicit in the breaches, would

16   effectively require a "heightened fact pleading of specifics" and "detailed factual

17   allegations," both of which Bell Atlantic rejected.  127 S.Ct. at 1964-65, 1974.

18

19   **3. Count III – Knowing Participant Liability**

20        Count III seeks equitable relief against any United Defendant which is determined

21   not to be a Plan fiduciary but which was complicit in the other Defendants' fiduciary

22   breach(es) (Docs. 38 at 44; 112 at 24-25).  See 29 U.S.C. § 1132(a)(3), ERISA § 503(a)(3)

23   ("A civil action may be brought . . . by a participant, beneficiary, or fiduciary (A) to enjoin

24   any act or practice which violates any provision of this subchapter or the terms of the plan,

25   or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to

26   enforce any provisions of this subchapter or the terms of the plan").  Defendants move to

27   dismiss Count III because a plaintiff may only seek relief under § 1132(a)(3) when no other

28

§ 1132 cause of action is available and, according to Defendants, Count III may be pled under a different subsection of § 1132 (Doc. 110 at 19-20). Defendants also challenge Count III for failing to seek equitable relief, as required by the statute (Doc. 110 at 20).

As mentioned above, § 1132(a)(3) is a "catchall" provision or "a safety net, offering appropriate equitable relief for injuries caused by violations that [§ 1132] does not elsewhere adequately remedy." Varity, 116 S.Ct. at 1078. Count III satisfies Varity because Plaintiffs are employing § 1132(a)(3) to seek relief in the alternative against any non-fiduciary United Defendant which knowingly participated in a fiduciary breach and against which no other cause of action is available (Doc. 112 at 24-25). See Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc., 120 S.Ct. 2180, 2189-91 (2000) (Section 1132(a)(3) cause of action is appropriate to prevent a non-fiduciary from benefitting from a fiduciary's breach).

However, § 1132(a)(3) also requires Plaintiffs to plead equitable relief, a requirement which is not satisfied and the lack of which is fatal to Count III. See 29 U.S.C. § 1132(a)(3) ("A civil action may be brought . . .(A) to enjoin any act or practice . . . or (B) to obtain other appropriate equitable relief").

Plaintiffs argue the Complaint's request for disgorgement of ill-gotten profits and a constructive trust satisfies § 1132(a)(3)'s equitable relief requirement (Docs. 38 at ¶ 3, 7; 112 at 25). However, "disgorgement of ill-gotten profits" and "constructive trust" are not talismanic phrases which, without more, constitute equitable relief. The Supreme Court's jurisprudence has been clear: "for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff *particular funds or property in the defendant's possession*." Great-West Life & Annuity Ins. Co. v. Knudson, 122 S.Ct. 708, 714-15 (2002) (emphasis added); accord Peralta v. Hispanic Bus., Inc., 419 F.3d 1064, 1075 (9th Cir. 2005). The Complaint fails to identify any specific fund or property held by one of the United Defendants that rightfully belongs to Plaintiffs or the Plans. See Bast v. Prudential Ins. Co. of Am., 150 F.3d 1003, 1011 (9th Cir. 1998) (rejecting a § 1132(a)(3) claim, despite a request to impose a constructive trust on ill-gotten profits,

1   because the claimant did not refer to "an identifiable portion of the beneficiaries' pension

2   plans [that] had been improperly taken").  Even a liberal reading of the Complaint only

3   alleges the United Defendants improperly disposed of Plan assets which have since become

4   part of one of the Defendant's, or a third party's, general funds.  Nowhere do Plaintiffs

5   mention any specific and identifiable set of assets upon which a proper constructive trust

6   could be imposed.[13]

7       Plaintiffs further argue "fiduciary debarment" is an equitable remedy which will

8   satisfy § 1132(a)(3) (Doc. 112 at 25).  Yet, Plaintiffs forget that Count III applies only to

9   non-fiduciaries, otherwise a § 1132(a)(2) breach of fiduciary duty claim would be the proper

10  cause of action, and it defies logic to argue that debarment of a fiduciary is an appropriate

11  equitable remedy to redress a wrong committed by a non-fiduciary.  Plaintiffs also suggest

12  the requests to "[e]njoin the United Defendants from continuing to deny coverage under the

13  Plans For Decompression Therapy in violation of ERISA," "[d]eclare that Decompression

14  Therapy is a covered benefit under the Plans," and "[e]njoin the United Defendants from any

15  further violations of ERISA" are equitable remedies that satisfy § 1132(a)(3) (Docs. 38 at 47-

16  48 ¶ 4-5, 10; 112 at 25-26).  Even assuming these remedies are all equitable in nature, they

17  are inappropriate against a non-fiduciary.  This is because, under ERISA:

18          a person is a fiduciary with respect to a plan to the extent (i) he
19          exercises any discretionary authority or discretionary control
            respecting management of such plan or exercises any authority
20          or control respecting management or disposition of its assets . .
            . or (iii) he has any discretionary authority or discretionary
21          responsibility in the administration of such plan.
22          29 U.S.C. § 1002(21)(A).

23

24  ────────────────

25      [13]Plaintiffs' citation to <u>Sereboff v. Mid Atl. Med. Serv.'s, Inc.</u>, 126 S. Ct. 1869, 1874 (2006)
    is inapposite, since the claimant in that case did exactly what Plaintiffs here failed to do: "This Court
26  in *Knudson* did not reject Great-West's suit out of hand because it alleged a breach of contract and
    sought money, but because Great-West did not seek to recover a particular fund from the defendant.
27  Mid Atlantic does."

28

See also Ariz. State Carpenters Pension Trust Fund v. Citibank (Ariz.), 125 F.3d 715, 720 (9th Cir. 1997) ("Fiduciary status under ERISA is to be construed liberally, consistent with ERISA's policies and objectives."). Thus, any party with authority to provide Plaintiffs with the relief described, i.e. alter the policy and operation of the Plans, would be a Plan fiduciary and subject to action under § 1132(a)(2), not § 1132(a)(3). In this way, the requested equitable remedies are inappropriate to redress alleged harms committed by a non-fiduciary and Count III, failing to plead a sufficient equitable remedy as required by § 1132(a)(3), will be dismissed.

**4. Count IV – Improperly Denied Benefits and Compensation**

Count IV seeks relief under 29 U.S.C. § 1132(a)(1)(B), ERISA 503(a)(1)(B) "to recover benefits due to [plan participants or beneficiaries] under the terms of [their] plan, to enforce [their] rights under the terms of the plan, or to clarify [their] rights to future benefits under the terms of the plan." Specifically, Plaintiffs seek to recover the cost of improperly denied benefits claims owed to Plan participants and beneficiaries. Plaintiffs also seek the difference between actual compensation paid to Plan providers, which Plaintiffs allege were improperly calculated, and properly calculated compensation (Doc. 38 at 44-45).

With respect to the improper denial of Plan benefits, Plaintiffs are divided into two class categories – the "Physical Therapy Class" and the "VAX-D Class" (Doc. 38 at 29).[14] VAX-D is shorthand for a type of medical treatment that involves a Vertebral Axial Decompression Table, referred to as Decompression Therapy (Doc. 38 at 22). The VAX-D class is the group which was improperly denied payment of benefits for Decompression Therapy treatment (Doc. 38 at 29). According to Plaintiffs, the denial of VAX-D benefits was improper because the United Defendants:

---

[14]Plaintiffs do not appear to apply the same distinction when discussing improperly calculated compensation rates (Doc. 38 at 25-26, 29-34, 44-45).

1   (1) formulated and adopted an official policy of not covering
    VAX-D treatments ("United Decompression Therapy Policy")
2   that failed to consider applicable state law, ignored relevant
    information, contradicted the provisions of some or all of the
3   implicated employee welfare benefit plans, and generally lacked
    medical expertise (Doc. 38 at ¶¶ 79-82); and
4

5   (2) applied this policy inconsistently (Doc. 38 at ¶ 83).

6

7   The second class, the Physical Therapy Class, is composed of the remaining Plaintiffs who

8   were improperly denied physical therapy treatments other than Decompression Therapy

9   (Doc. 38 at 25-26).

10      Defendants seek dismissal on five grounds, which are discussed below (Doc. 110 at

11  21-29; 123 at 14-15).

12

13  a. VAX-D Class Claim: Deference To Decompression Therapy Policy

14  i. Issues of Law

15

16      Defendants argue the VAX-D class allegations fail to state a claim because a

17  deferential standard of review must be applied when determining the propriety of a

18  discretionary decision made by a plan administrator, i.e. adoption of the Decompression

19  Therapy Policy, and the allegations fail to meet this heightened standard (Doc. 110 at 23-26).

20  Defendants specifically argue Decompression Therapy Policy must be reviewed for abuse

21  of discretion and insufficient facts are alleged to show the United Defendants acted in an

22  arbitrary and capricious manner in formulating the policy.

23      When a plan administrator is given the authority to make a discretionary decision,

24  such as formulating policy coverage, the propriety of such a decision may only be reviewed

25  under an abuse of discretion standard.  However, if the administrator makes a discretionary

26  decision *without authority* explicitly conferred by the plan,  the administrator's action is

27  reviewed *de novo*.  <u>See</u> <u>Abatie v. Alta Health & Life Ins. Co.</u>, 458 F.3d 955, 963 (9th Cir.

28  2006) ("When a plan does not confer discretion on the administrator to determine eligibility

for benefits or to construe the terms of the plan, a court must review the denial of benefits *de novo* . . . But if the plan *does* confer discretionary authority as a matter of contractual agreement, then the standard of review shifts to abuse of discretion.") (internal citation omitted).  The critical step in the analysis is thus to examine whether the terms of the forty-five Plans have granted discretion to the administrator (which is  assumed to be one or all of the United Defendants for the purpose of this subsection) to issue the Decompression Therapy policy.

ii. Issues of Fact

In support of the Motion to Dismiss, Defendants have attached policy documents for thirteen Plans (Doc. 104).[15]  If Defendants had provided policy documents for all forty-five Plans and listed whether (and where) each document expressly provided for its administrator to make discretionary determinations, such as the Decompression Therapy Policy, the documents could be examined and a factual determination made.  Defendants fail to explain why the Motion includes only thirteen Plan documents, instead of the complete forty-five, and which of those documents have explicitly granted the administrator the authority to make discretionary decisions and thus deserve judicial deference.

Given Defendants' failure to demonstrate the Decompression Therapy Policy is owed deference, Plaintiffs need not plead sufficient facts to show abuse of discretion.  Instead, Plaintiffs need only show Defendants' formulation of the policy breached a duty owed to the VAX-D class members.  Plaintiffs' pleading satisfies this standard.

---

[15]  See Lazy Y Ranch Ltd, 546 F.3d at 588 (When adjudicating a motion to dismiss, a court "need not accept as true allegations contradicting documents that are referenced in the complaint"); Knievel, 393 F.3d at 1076 (Consideration of materials incorporated by reference in the complaint is permitted when "plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document.").  The Complaint relies on these documents to establish the basis for Plaintiffs' claims, alleging the United Defendants breached duties to the Plaintiffs as outlined in the respective Plan documents, Defendants have authenticated these documents (Doc. 104) and Plaintiffs have not properly objected to their authenticity.

Moreover, even if Defendants had shown substantial deference was owed, the argument would have failed.  Defendants claim review of a plan administrator's decision for abuse of discretion must apply a simple arbitrary and capricious standard.  See e.g. Kilar v. Blue Cross Blue Shield Ass'n, 195 Fed. Appx. 547, 548 (9th Cir. 2006) (when reviewing an ERISA plan administrator's decision, "a discretionary determination is an abuse of discretion only when it is arbitrary and capricious") (internal citation omitted).  However, the analysis does not end there.  The Court must take into account any alleged conflicts of interest held by the plan administrator, discounting any deference based on the strength of the conflict.  See Metro. Life Ins. Co., 128 S.Ct. 2343, 2348-51; see also Wilcox v. Wells Fargo & Co. Long Term Disability Plan, 287 Fed. Appx. 602, 603-04 (9th Cir. 2008) (summarizing Metro Life Ins. Co. and Abatie).  Because the Complaint alleges a conflict of interest, questions of fact have been implicated that, if interpreted in a light most favorable to the Plaintiffs, prevent the Court from sustaining the United Defendants' Decompression Therapy Policy argument, even if the Court applies an abuse of discretion standard.  The Defendants' argument, thus, does not prevail (Docs. 110 at 23-26; 123 at 15-16).

b. Failure to Sufficiently Plead Physical Therapy Class Claim

Defendants next argue the Physical Therapy Class allegations fail to state a claim because the allegations do not provide sufficient facts as to what specific healthcare services were denied and when the services were denied, per Bell Atlantic (Doc. 110 at 27).  The Court disagrees.  The Complaint alleges the Physical Therapy Class is a group of similarly situated Plaintiffs whose physical therapy benefit claims (other than Decompression Therapy) were wrongfully denied during the period six years prior to March 7, 2008 (Doc. 38 at 29).  The Complaint lays out which Defendants were responsible for the wrongful denials and the alleged improper reasons for the denials (Doc. 38 at 22-23, 25-27, 44-45).  As discussed in Section IV.C.2 above, to demand more would effectively require "heightened

1   fact pleading of specifics" and "detailed factual allegations," both of which <u>Bell Atlantic</u>
2   specifically rejected.  127 S.Ct. 1955 at 1964-65, 1974.

3

4   c. Defendants' Administrator Status

5   i. Issues of Law

6          Defendants further argue Count IV is defective because the United Defendants are not
7   Plan administrators and thus are not subject to suit under § 1132(a)(1)(B) (Doc. 110 at 27-
8   29).   Ninth Circuit law is not entirely clear on who is a proper defendant for a §
9   1132(a)(1)(B) claim.  Some cases interpret § 1132(a)(1)(B) as applicable only to the plans
10  themselves, while other cases allow plan administrators to be named as defendants  <u>See</u>
11  <u>Everhart</u>, 275 F.3d at 754 (identifying intra-circuit split); <u>see also</u> <u>Gelardi v. Pertec Computer</u>
12  <u>Corp.</u>, 761 F.2d 1323, 1324 (9th Cir. 1985) ("ERISA permits suits to recover benefits only
13  against the Plan as an entity"); <u>Taft v. Equitable Life Assurance Soc'y</u>, F.3d 1469, 1471 (9th
14  Cir. 1993), *abrogated on other grounds*, ("The beneficiary of an ERISA plan may bring a
15  civil action against a plan administrator to recover benefits due to him under the terms of his
16  plan") (internal citation omitted).  The Ninth Circuit, however, has clearly indicated who is
17  not subject to suit, insurers who are neither plans nor plan administrators.  <u>See</u> <u>Everhart</u>, 275
18  F.3d at 754 ("Under either *Gelardi* or *Taft* and their respective progeny, [a plan beneficiary]
19  may not sue the plan's *insurer* for additional ERISA plan benefits.").

20         Plaintiffs' arguments against this settled law are unavailing (Doc. 112 at 28-29).
21  Plaintiffs first argue the plain text of § 1132(a)(1)(B) is silent on the question of who is
22  properly subject to suit and thus should be interpreted as an invitation to include an open-
23  ended universe of potential defendants (Doc. 112 at 28 n.38).  Plaintiffs are correct that this
24  is the interpretive approach chosen by the Supreme Court for § 1132(a)(3).  <u>See</u> <u>Harris Trust</u>
25  <u>& Sav. Bank</u>, 120 S. Ct. at 2187.  However, the Supreme Court has not issued a similar
26  interpretation for § 1132(a)(1)(B).  Conversely, the Ninth Circuit has decided this issue,
27  conclusively interpreting § 1132(a)(1)(B) and in no uncertain terms rejecting Plaintiffs'
28

1    suggested approach.  Plaintiffs next argue for the Court to follow a line of cases which
2    allowed plan participants to sue third-party insurers for improperly denied benefits under §
3    1132(a)(1)(B) (Doc. 112 at 28 n.39).  <u>See</u> <u>e.g.</u> <u>UNUM Life Ins. Co. of Am. v. Ward</u>, 119 S.
4    Ct. 1380 (1999); <u>Ward v. Mgmt. Analysis Co. Disability Benefit Plan</u>, 135 F.3d 1276 (9th
5    Cir. 1998); <u>Cisneros v. UNUM Life Ins. Co. of Am.</u>, 134 F.3d 939 (9th Cir. 1998).  However,
6    because the question of proper § 1132(a)(1)(B) defendant was not before any of those courts,
7    the cited decisions did not attempt to interpret § 1132(a)(1)(B) and do  not stand for the
8    position that plan participants may sue a third-party insurer, which is neither the plan
9    administrator nor the plan, for improperly denied benefits.  Plaintiffs also argue <u>Gelardi</u>, the
10   predecessor to <u>Everhart</u>, stands for the position that the proper defendant in a § 1132(a)(1)(B)
11   suit is *"any party* that performs fiduciary claims administration" (Doc. 112 at 28 n. 39).  This
12   reading of <u>Gelardi</u> is incorrect.  <u>See</u> <u>Everhart</u>, 275 F.3d at 754 ("We held in *Gelardi* . . . that
13   'ERISA permits suits [under § 1132(a)(1)(B) ] to recover benefits only against the Plan as
14   an entity.' Subsequent cases in this circuit have relied on *Gelardi* to limit benefit suits to the
15   plan.") (citing <u>Gelardi</u>, 761 F.2d at 1324).  Plaintiffs lastly cite a number of out-of-circuit
16   appellate court decisions, which, insofar as they contradict established Ninth Circuit law, are
17   not applicable here (Doc. 112 at 29 n.39).

18       Plaintiffs, however, are correct that the dispositive issue here is one of fact, whether
19   any of the United Defendants meets the statutory criteria to be labeled as Plan administrator
20   for the forty-five Plans (Doc. 112 at 28 n.37).

21
22   ii. Issues of Fact

23       A plan administrator is "the person specifically so designated by the terms of the
24   instrument under which the plan is operated."  <u>Ford</u>, 399 F.3d at 1081(citing 29 U.S.C. §
25   1002(16)(A)(i)).  In cases where the plan administrator is not specifically designated, the
26   statute provides the plan administrator is the plan sponsor, usually the employer or employee
27
28

1    organization that established the plan, or, absent a sponsor, a person whom the Secretary of

2    Labor designates by regulation.  See 29 U.S.C. §§ 1002(16)(A)(ii)-(iii), (B).

3            Just as in Section IV.D.4.a.ii above, Defendants argue the necessary facts to settle this

4    issue are located in Defendants' evidentiary submission.  If Defendants had provided policy

5    documents for all forty-five Plans, instead of thirteen, and listed whether (and where) each

6    document provided for the Plan administrator, the documents could be examined and the

7    required factual determination could be made.  Defendants have failed to carry the burden

8    in showing the United Defendants are not named as administrators in the policy documents

9    of the forty-five Plans and thus are immune from suit under § 1132(a)(1)(B) (Doc. 110 at 28).

10   Because Plaintiffs have alleged the United Defendants are administrators of all of the Plans,

11   the unresolved factual question must be resolved in Plaintiffs' favor and Defendants'

12   argument must be rejected.

13           Plaintiffs also unsuccessfully attempt to resolve this factual dispute.  Plaintiffs argue

14   Defendants are collaterally estopped, via offensive issue preclusion, from arguing they are

15   not Plan administrators.  Plaintiffs' estoppel argument is predicated on the decision of

16   another Arizona federal district court, in 2005, which denied Defendant United Healthcare

17   of Arizona, Inc.'s motion for summary judgment, based in part on the court's inability to

18   determine Defendant's plan administrator status (Docs. 112 at 26-7, 116 Ex. C).  For the

19   2005 decision to be relevant, the plans at issue in that case must be the same as the Plans

20   here, which Plaintiffs do not show.  Plaintiffs' argument also assumes the remaining United

21   Defendants, other than United Healthcare of Arizona, were party to the 2005 case (through

22   privity), which is speculation.  Even if all of Plaintiffs' assumptions were accepted, a failure

23   to grant summary judgment is not a conclusive finding of fact but rather an affirmation that

24   the facts are unclear and must be resolved at trial.  Such a decision is not an appropriate basis

25   for offensive issue preclusion.[16]

26

27           [16]In assessing Plaintiffs' preclusion arguments, the Court applies federal preclusion law.
28   See Kendall v. Visa U.S.A., Inc., 518 F.3d 1042, 1050-51 (9th Cir. 2008) (establishing elements of

1    Plaintiffs also argue the United Defendants admitted administrator status during the

2    2005 proceedings and are bound by those admissions (Doc. 112 at 27-28).  While Plaintiffs

3    are correct that a party's admission in prior litigation estops such party from making

4    subsequent contrary arguments, only one Defendant (United Healthcare) admitted any fact

5    in the 2005 case and only admitted the fact that it "administered claims" for the plans, not

6    the legal conclusion that it served as a plan administrator defined in 29 U.S.C. § 1002(16)

7    (Doc. 116 Ex. B at ¶ 26).  See Fernhoff v. Tahoe Reg'l Planning Agency, 803 F.2d 979, 985

8    (9th Cir. 1986) (A "stipulation in [a] previous suit involving plaintiff and third party

9    constitutes judicial admission [and]  may be used against plaintiff in [the] current suit").

10   Plaintiffs lastly contend Defendants' other legal arguments implicitly admit United

11   Defendants' Plan administrator status (Doc. 112 at 29 n.41).  See supra Section IV.D.4.a .

12   This contention is also misplaced, failing to acknowledge the well-established practice of

13   alternative pleading.  See Fed. R. Civ. P. 8(d)(2).

14   In this way, the United Defendants' administrator status cannot be conclusively

15   determined on the current Motion To Dismiss.[17]  Plaintiffs sufficiently plead the United

16

17   offensive issue  preclusion as: (1) "full and fair opportunity to litigate the issue in the previous
     action;" (2) "the issue was actually litigated in that action;" (3) "the issue was lost as a result of a
18   final judgment in that action;" and (4) "the person against whom collateral estoppel is asserted in
     the present action was a party or in privity with a party in the previous action.").  Denial of a motion
19   for summary judgment fails to meet prong (3), as it presents no final judgment on the litigated issue.
     See also Semtek Int'l, Inc. v. Lockheed Martin Corp., 531 U.S. 497, 508 (2001) (federal courts, in
20   diversity cases, must apply preclusion law of the state in which the court sits); In re Gen.
     Adjudication of All Rights to Use Water In Gila River Sys. and Source, 127 P.3d 882, 887 (Ariz.
21   2006) (holding Arizona courts must give federal court judgments same preclusive effect as under
     federal preclusion law).  See also e.g. Wojtunik v. Carolina Cas. Ins. Co., 2007 WL 2746765, *2 (D.
22   Ariz. 2007).
23

24

25   [17]Plaintiffs' arguments concerning Federal Rule of Civil Procedure 19 and Ninth Circuit
     district court decisions distinguishing Ford are all fact-dependent arguments, for which neither party
26   provides sufficient facts, and thus must wait for a motion for summary judgment (Doc. 112 at 29 &
     n. 40).  See e.g. Cyr v. Reliance Standard Life Ins. Co., 525 F. Supp. 2d 1165, 1173-74 (C.D. Cal.
27   2007) (refusing to extend Ford to all situations in which plan documents fail to explicitly name a
     plan administrator); Moody v. Liberty Life Assurance Co., 2007 WL 1174828, *4 (N.D. Cal. 2007)
28   (suggesting a party not named as a plan administrator in benefit plan documents could be considered

Defendants are Plan administrators and Defendants have failed to demonstrate otherwise (Doc. 38 at 8-12).[18]

d. Administrative Exhaustion

Defendants also argue Plaintiffs' § 1132(a)(1)(B) claim is defective for failing to comply with ERISA's administrative exhaustion requirements (Doc. 110 at 21-23). A plaintiff must exhaust administrative remedies available under the applicable plan before filing a § 1132(a)(1)(B) claim. See Amato v. Bernard, 618 F.2d 559, 566, 568 (9th Cir. 1980) ("It is true that the text of ERISA nowhere mentions the exhaustion doctrine . . . [yet] we conclude that the federal courts have the authority to enforce the exhaustion requirement in suits under ERISA, and that as a matter of sound policy they should usually do so."). Accordingly, Plaintiffs pled exhaustion of administrative remedies: "Plaintiffs have exhausted all required administrative appeals process" (Doc. 38 at 45). However, Defendants claim Plaintiffs' pleading is conclusory and insufficient to state a claim per Bell Atl. Corp. 127 S.Ct. at 1964-65. Defendants cite a decision directly on point, finding a plaintiff's simple claim of exhausting administrative remedies was insufficient under Rule 12(b)(6) to plead ERISA exhaustion. See DeVito v. Local 553 Pension Fund, 2005 WL 167590, *7 (S.D.N.Y. 2005). Yet, this case, being both out-of-circuit and unpublished, is limited in persuasive authority. The trend among the district courts appears to grant plaintiffs more lee-way than DeVito, only dismissing ERISA claims for failure to adequately plead exhaustion when the complaint does not refer to administrative procedures, but rather alludes vaguely to meeting all conditions precedent or fails to mention exhaustion at all. See e.g. Med. Alliances, LLC v. Am. Med. Sec., 144 F. Supp. 2d 979, 982-83 (N.D. Ill. 2001) (the

---

a de facto plan co-administrator under the proper circumstances).

[18]The only United Defendant for which Plaintiffs fail to plead ERISA plan administrator status is Defendant Ingenix, Inc. (Doc. 38 at 11). However, Defendants insufficiently argue this omission forecloses any § 1132(a)(1)(B) remedy against Ingenix.

phrase "has made numerous demands for payment from the Defendant . . . and the Defendant has refused and continues to refuse to pay the Plaintiff as required" failed to plead ERISA exhaustion); C.P. Motion, Inc. v. Aetna Life Ins. Co., 268 F. Supp. 2d 1346, 1348 (S.D. Fla. 2003) (similar finding for the phrases "Plaintiff has satisfied all conditions precedent required of it prior to bringing the instant suit" and "Plaintiff has complied with all provisions of, and conditions precedent to, the group health insurance contract at issue that legally apply to it.").

The Court has broad discretion to determine the sufficiency of Plaintiffs' pleading of ERISA exhaustion. See e.g. Byrd v. MacPapers, Inc., 961 F.2d 157, 160-61 (11th Cir. 1992) (reviewing district court's ruling on the sufficiency of ERISA exhaustion pleading for abuse of discretion). Given the number of Plaintiffs and Plans implicated in this case, Plaintiff's "short and plain statement" regarding exhaustion is sufficient to satisfy the requirements of Rule 8 and to put Defendants on notice concerning this issue. Fed. R. Civ. P. 8(a)(1). See also e.g. Sumpter v. Mack Chicago Corp., 918 F. Supp. 256, 259 (N.D. Ill.1996) (finding the phrase "has exhausted all administrative remedies provided for by the [employee benefit] plan" sufficient to plead ERISA exhaustion). To demand more under these circumstances would effectively require "heightened fact pleading of specifics" and "detailed factual allegations," both of which Bell Atlantic rejected. 127 S.Ct. 1955 at 1964-65, 1974. Because the Court has found Plaintiffs have properly pled administrative exhaustion, the sufficiency of Plaintiffs' alternative argument, excuse due to futility and breach of duty, need not be reached (Docs. 38 at 45; 112 at 22-23).

e. General Bell Atlantic Objection

Defendants argue Plaintiffs' § 1132(a)(1)(B) claim fails under Bell Atlantic because "it lumps all fifty-one Defendants together, without affording the various Defendants specifics as to how each allegedly is liable under ERISA § [1132](a)(1)(B)" (Doc. 110 at 21).

1   Having addressed this argument in Section IV.C above, the analysis need not be repeated.

2

3   **5. Count V – Failure To Provide Required Information**

4   Plaintiffs' final cause of action concerns the United Defendants' failure to provide

5   Plan documentation, as required by 29 U.S.C. § 1132(c)(1); ERISA 503(c)(1):

6           Any administrator . . . who fails or refuses to comply with a
            request for any information which such administrator is required
7           by this subchapter to furnish to a participant or beneficiary . . .
            may in the court's discretion be personally liable to such
8           participant or beneficiary in the amount of up to $100 a day
            from the date of such failure . . .
9

10  Plaintiffs allege Defendants breached two specific duties of disclosure contemplated by §

11  1132(c).  The first is a duty applicable to plan administrators, outlined in 29 U.S.C. §

12  1024(b)(4):

13          "The administrator shall, upon written request of any participant
            or beneficiary, furnish a copy of the latest updated summary,
14          plan description, and the latest annual report, any terminal
            report, the bargaining agreement, trust agreement, contract, or
15          other instruments under which the plan is established or
            operated."
16

17  The second duty is a fiduciary duty, rooted in 29 U.S.C. § 1104(a) and more thoroughly

18  fleshed out in Ninth Circuit jurisprudence.  See Hughes, 72 F.3d at 693 (section 1104(a)

19  imposes a duty of disclosure upon fiduciaries "limited to the disclosure of information that

20  relates to the provision of benefits or the defrayment of expenses"); see also 29 U.S.C. §

21  1104(a) ("a fiduciary shall discharge his duties with respect to a plan solely in the interest of

22  the participants and beneficiaries and – for the exclusive purpose of: providing benefits to

23  participants and their beneficiaries; and defraying reasonable expenses of administering the

24  plan").

25  Defendants argue § 1024(b)(4) requires requests for information to be made in

26  writing, a fact which Plaintiffs have failed to plead, and thus the claim must be dismissed for

27  failure to state a claim (Doc. 110 at 31).  The Court agrees.  Section § 1024(b)(4) specifically

28

1    requires any request for information must be made in writing.  See 29 U.S.C. § 1024(b)(4)

2    ("The administrator shall, upon written request . . .).  The Complaint describes various

3    requests for information, but makes no mention of any written requests (Doc. 38 ¶¶ 93-94,

4    99(i), 100(g), 144).  Plaintiffs do not argue otherwise and thus the claim fails.  See Crotty v.

5    Cook, 121 F.3d 541, 547-48 (9th Cir. 1997) (requests for information made pursuant to §

6    1024(b)(4) must be made in writing; see also e.g. Colin v. Marconi Commerce Sys.

7    Employees' Ret. Plan, 335 F. Supp. 2d 590, 611(M.D.N.C. 2004) (resolving § 1024(b)(4)

8    question as a matter of law for plaintiffs' failure to allege a written request); Colarusso v.

9    Transcapital Fiscal Sys., Inc., 227 F. Supp. 2d 243, 258 (D. N.J. 2002) ("[B]ecause Plaintiff

10   only made an oral request for information covered by 29 U.S.C. §§ 1024(b)(4) and 1025(a),

11   both of which require requests for information to be in writing, no civil penalties may be

12   imposed").

13        Defendants further argue the Court should dismiss Plaintiffs' § 1104 claim because

14   it is impermissibly vague, per Bell Atlantic (Doc. 110 at 29-31).  The Court disagrees.  The

15   Complaint identifies specific Defendants as well as which particular documents were

16   requested, including copies of the master policy, amendments, and other documents that

17   appear related "to the provision of benefits or the defrayment of expenses" of the Plans (Doc.

18   38 27-29, 46).  Hughes, 72 F.3d at 693.  While Plaintiffs do not list which documents were

19   requested per each Plan, Plaintiffs' factual allegations are sufficient to give Defendants

20   notice and satisfy the Bell Atlantic standard.  Defendants also argue for the dismissal of

21   Plaintiffs' § 1104 claim because § 1132(c) liability only attaches to plan administrators and

22   Defendants claim the United Defendants are not plan administrators (Doc. 110 at 29-31).

23   Although Defendants are correct that § 1132(c) only attaches to plan administrators, as

24   discussed in Section IV.D.4.c.ii above, Defendants have not established conclusively the

25   United Defendants are not administrators for some or all of the Plans.  See Moran v. Aetna

26   Life Ins. Co., 872 F.2d 296, 299 (9th Cir. 1989) ("We believe that the rationale and policies

27   articulated by the court in *Russell* require us to limit liability under 1132(c) to the targets

28   expressly identified by Congress in section 1002(16) [plan administrators].").   Thus,

1    Plaintiffs' Count V stands with respect to the fiduciary duty to disclose documents
2    (established in § 1104) but fails with respect to the administrative duty to perform the same
3    (established in § 1024(b)(4)).

4

5           Accordingly,

6
7           **IT IS ORDERED** Plaintiffs' Motion For Leave To File Separate Statement,
     Objections , and Motion To Strike (Doc. 113) **IS DENIED**.
8

9           **FURTHER ORDERED** Plaintiffs' Request For Judicial Notice (Doc. 115) **IS**
10   **GRANTED IN PART**, in conformance with Section II of this Order.

11
           **FURTHER ORDERED** Plaintiffs' Second Request For Judicial Notice (Doc. 124)
12   **IS GRANTED**.
13

14          **FURTHER ORDERED** Plaintiffs' Motion For Leave To File Supplemental
15   Memorandum (Doc. 125) **IS DENIED**.

16
           **FURTHER ORDERED** Defendants' Revised Motion To Dismiss The Second
17   Amended Complaint (Doc. 110) **IS GRANTED IN PART**.
18

19          **FURTHER ORDERED** the Plan Defendants **ARE DISMISSED** from this action
20   **WITH PREJUDICE**.  The Clerk of Court shall remove all Defendants *except*: United
21   Healthcare of Arizona, Inc., Ingenix, Inc., UnitedHealth Group, Inc., United Healthcare, Inc.,
22   United Healthcare Insurance Co., and United Healthcare Services, Inc.

23
           **FURTHER ORDERED** Count III of Plaintiffs' Second Amended Complaint (Doc.
24   38) **IS DISMISSED WITH PREJUDICE**.
25

26

27

28

**FURTHER ORDERED** Count I of Plaintiffs' Second Amended Complaint (Doc. 38) **IS DISMISSED IN PART**, **WITH PREJUDICE**, in conformance with Section IV.D.1 of this Order.

**FURTHER ORDERED** Count V of Plaintiffs' Second Amended Complaint (Doc. 38) **IS DISMISSED IN PART, WITH PREJUDICE**, in conformance with Section IV.D.5 of this Order.

DATED this 28th day of April, 2009.

Roslyn O. Silver
United States District Judge